FOR PUBLICATION

### IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| RONALD MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2008-109 |
| | ) | |
| BANCO POPULAR DE PUERTO RICO, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————————— | ) | |

ATTORNEYS:

**James M. Derr, Esq.**
St. Thomas, U.S.V.I.
    *For the plaintiff,*

**Ashlee M. Gray, Esq.**
St. Thomas, U.S.V.I.
    *For the defendant.*


### MEMORANDUM OPINION

GÓMEZ, C.J.

Before the Court is the motion of Ronald Martin ("Martin") for summary judgment on his complaint against Banco Popular de Puerto Rico ("Banco Popular"). Additionally, Banco Popular has filed a cross-motion for summary judgment on its counterclaim against Martin. For the reasons stated below, the Court will grant Martin's motion. The Court will deny Banco Popular's motion.

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 2

## I.  **FACTS**[1]

James L. Reed ("James Reed') owned a condominium unit described as Apartment No. 302E St. Maarten Building, Sapphire Hill Village Condominium, Parcel No. 16-1-1A Estate Smith Bay, Nos 1, 2, and 3 East End Quarter, St. Thomas, U.S. Virgin Islands (the "Condominium").  The Condominium was subject to a mortgage (the "Mortgage"), which was originally executed in favor of the Home Mortgage Company.  In 1992, the Mortgage was assigned to Banco Popular.

Reed died intestate in 1995.  Helen M. Reed ("Helen Reed") was appointed administratrix of the Estate of James Reed, in a probate action conducted in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John, captioned *Estate of James Leonard Reed*, Terr. Ct. Probate No. 982/1995 (the "Probate Action").

In July, 1999, the Estate of James Reed filed a Final Account in the Probate Action, which indicated that the only assets of the Estate were the Condominium and $969.76 in cash. In November, 1999, the Estate filed a petition requesting that all of the assets of the Estate be distributed to Anngia Reed, James Reed's daughter.

---

[1]  The parties have stipulated to the facts contained in this section.

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 3

In August, 2002, Helen Reed sent a letter to the Superior Court stating that she wished to resign as administratrix, and requesting that she be released from any further obligations in the Probate Action.

On March 26, 2003, Helen Reed, individually and in her capacity as administratrix of the Estate, and Anngia Reed, individually, executed a Deed in Lieu of Foreclosure in favor of Banco Popular.  The Deed in Lieu of Foreclosure purported to transfer the Condominium to Banco Popular in exchange for satisfaction of the debt secured by the Mortgage.  The Deed in Lieu of Foreclosure was recorded with the Recorder of Deeds for St. Thomas and St. John (the "Recorder") on May 14, 2003, as document number 2003003389.

On September 12, 2003, Banco Popular entered into a Contract of Sale (the "Contract") with Ronald Martin for the sale of the Condominium.  Pursuant to the Contract, Banco Popular promised to convey the Condominium to Martin for the purchase price of $38,000.  Paragraph eight of the Contract states that Martin, a licensed real estate broker in the Virgin Islands, is the selling realtor for the transaction.  Cassandra Francis ("Francis") of Francis Properties is the listing realtor.  Paragraph eight further states that Martin and Francis are agents of Banco Popular for the sale of the Condominium, and are to be paid

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 4

commissions by Banco Popular in connection therewith.  Paragraph

ten of the Contract provides:

> [I]f the transaction contemplated herein is not
> closed by reason of Seller's default or failure or
> refusal to perform through no fault of the Buyer,
> then Buyer shall have the right to elect either (I)
> to terminate this agreement, and receive a refund of
> the earnest money deposit paid hereunder, and no
> party shall have any rights, obligations or
> liabilities hereunder, except that the Seller shall
> be obligated to immediately pay Broker to the full
> commission as set forth in the listing agreement, or
> (ii) Buyer may pursue an action for specific
> performance.

(Ex. F to Stipulation of Undisputed Facts, Contract of Sale 4, ¶

10, Sept. 12, 2003.)  Martin paid the earnest money deposit for

the Condominium to Francis.

On October 20, 2003, Juliette C. Kean ("Kean"), Vice-

President of Banco Popular, executed a warranty deed conveying

the Condominium to Ronald Martin and Susan Martin for the

purchase price of $38,000.  That deed was never delivered to

Martin.

Thereafter, Banco Popular claimed that it did not possess

clear title to the Condominium.  In a correspondence dated

December 29, 2003, Martin offered to rent the Condominium until

such time as Banco Popular was prepared to close on the Contract

of Sale.  Banco Popular did not accept Martin's offer to rent the

Condominium.  Between February 1, 2003, and February 22, 2007,

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 5

Banco Popular paid a total of $32,420.84 in condominium dues and assessments for the Condominium.

On January 27, 2004, Helen Reed filed a motion asking that her request to resign as administratrix of the Estate of James Reed be withdrawn, and that she be re-appointed as administratrix of the Estate. Also on January 27, 2004, Helen Reed, in her capacity as administratrix of the Estate, filed a motion to authorize the transfer of the Condominium to Banco Popular pursuant to the March 26, 2003, Deed in Lieu of Foreclosure.

On November 10, 2004, Helen Reed filed a renewed motion to authorize the transfer of the Condominium to Banco Popular pursuant to the Deed in Lieu of Foreclosure. The renewed motion states that "[t]here is a Contract of Sale dated September 12, 2003[,] between Ronald Martin and the Bank for the purchase price of THIRTY EIGHT THOUSAND DOLLARS ($38,000), that remains to be consummated, thus the renewal of the motion to authorize transfer fo the real property from the Estate to the Bank." (Ex. M. to Joint Stipulation of Facts, Renewed Mot. to Authorize Transfer of Property 2, Nov. 10, 2004.)

In a letter dated January 26, 2006, counsel for Banco Popular informed Martin that "after incessant efforts [Banco Popular] has yet to acquire clear title to [the Condominium]. Because Banco Popular does not effectively own the [Condominium],

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 6

it is in no position to sell it to you." (Ex. N. to Joint
Stipulation of Facts, Letter from Dudley Topper and Feurzeig, LLP
to Martin 1, Jan. 26, 2006.)  The letter further stated that
Banco Popular was terminating the Contract of Sale and returning
Martin's earnest money deposit.

In a letter dated January 30, 2006, Martin informed counsel
for Banco Popular that he did not consent to the termination of
the Contract.

In February, 2006, counsel for Banco Popular wrote to the
Chief Deputy Clerk of the Probate Division of the Superior Court
seeking a response to the renewed motion to authorize transfer of
the Condominium.  In June, 2006, counsel for Banco Popular sent a
letter to the Honorable Brenda J. Hollar, Judge of the Superior
Court, asking for expedited consideration of the renewed motion
to authorize transfer.

On July 13, 2006, Martin executed a Notice of Interest with
respect to the Condominium.  Martin recorded the Notice of
Interest with the Recorder of Deeds.

In a letter dated July 28, 2006, counsel for Banco Popular
notified Cassandra Francis of Francis Properties that Banco
Popular was terminating the Contract and directed Francis to
return Martin's earnest money deposit for the Condominium.  On
July 31, 2006, Francis Properties issued a check to Martin in the

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 7

amount of his deposit.  On August 7, 2006, Martin returned the uncashed check for the Condominium deposit to Francis Properties, and informed Francis that he believed Banco Popular to be still bound by the Contract.  That same day, counsel for Banco Popular wrote a letter to Martin, which reiterated that Banco Popular was terminating the Contract.

On October 4, 2006, the Superior Court entered an Adjudication (the "Adjudication") declaring Anngia Reed to be the sole heir at law of James Reed, and awarding her all of the property of the Estate, including the Condominium.  The Superior Court did not rule on the renewed motion to authorize transfer of the Condominium.

In a correspondence dated June 18, 2007, counsel for Banco Popular informed Francis that the Superior Court had adjudicated title to the Condominium in favor of Anngia Reed, and again directed her to return Martin's deposit.  That same day, counsel for Banco Popular wrote to Martin, notifying him of the Adjudication, and again reiterating Banco Popular's position that the Contract was of no force and that Martin's deposit would be returned.

In a facsimile dated July 10, 2007, Martin informed counsel for Banco Popular that he would leave his deposit money in the escrow account of Francis Properties.  In a letter dated July 13,

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 8

2007, counsel for Banco Popular told Francis that if she continued to hold Martin's deposit money in Francis Properties' escrow account, such action would not be as an agent of Banco Popular.

On July 16, 2008, Martin commenced this action against Banco Popular in the Superior Court, claiming that Banco Popular breached its obligations under the Contract, and requesting specific performance thereof.  Specifically, Martin's complaint seeks an order directing Banco Popular to convey the Condominium to him by warranty deed for the purchase price of $38,000.

On August 1, 2008, the matter was removed to this Court, pursuant to a notice of removal filed by Banco Popular.[2] Thereafter, Banco Popular filed an answer to Martin's complaint. Banco Popular also filed a counterclaim against Martin.  Count One of the counterclaim seeks a declaratory judgment stating that Banco Popular "properly terminated the Contract when it could not convey title within a reasonable period of time." (Answer and Counterclaim 4, ¶ 11, Aug. 13, 2008.)  Count Two is a claim for

---

[2]   The notice of removal states that removal is appropriate on grounds that the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]").

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 9

slander of title, based on Martin's conduct in recording the Notice of Interest in the Condominium.  Count Three seeks an injunction requiring Martin to immediately remove the Notice of Interest.  Count Five is a claim for unjust enrichment against Martin.

Now, Martin seeks summary judgment on his complaint against Banco Popular.[3]  Banco Popular also seeks summary judgment on its counterclaim against Martin for slander of title.

## II.  DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762

---

[3]  Martin's motion for summary judgment states that Martin also seeks summary judgment on Banco Popular's counterclaims against him.  However, Martin has advanced absolutely no argument as to why he is entitled to summary judgment on Banco Popular's counterclaim.

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 10

F.2d 338, 342 (3d Cir. 1985).  The non-moving party "may not rest

upon mere allegations, general denials, or . . . vague statements

. . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.

1991).  "[T]here is no issue for trial unless there is sufficient

evidence favoring the non-moving party for a jury to return a

verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

        "[A]t the summary judgment stage the judge's function is not

himself to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for

trial." *Id*. In making this determination, this Court draws all

reasonable inferences in favor of the non-moving party. *See Bd.*

*of Educ. v. Earls*, 536 U.S. 822, 850, 122 S.Ct. 2559, 153 L.Ed.2d

735 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777

(3d Cir. 1994).

### III.  <u>ANALYSIS</u>

**A.   Martin's Motion for Summary Judgment**

        Martin argues that he is entitled to summary judgment on

his complaint against Banco Popular, which alleges that Banco

Popular refused to convey the Condominium in accordance with the

Contract and requests that Banco Popular be compelled to

specifically perform its obligations thereunder.  In addressing

Martin's motion, the Court must first determine whether Banco

Martin v. Banco Popular de Puerto Rico
Civil No. 2008-109
Memorandum Opinion
Page 11

Popular breached the Contract.  If so, then the Court must assess whether specific performance is an appropriate remedy for such breach.

**1.   Breach of Contract**

"To succeed on a breach of contract claim, a plaintiff must show four elements: (1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Danielson v. Innovative Communications, Corp.,* 184 L.R.R.M. (BNA) 2762, 6 (D.V.I. 2008); *see also* Restatement (Second) of Contracts §§ 235, 237, 240 (providing that a breach of contract occurs when a party does not perform a duty imposed by a contract).

Here, it is undisputed that an agreement existed between Matin and Banco Popular, which was memorialized in the Contract of Sale.  Additionally, pursuant to the undisputed facts, it is clear that the Contract imposed on Banco Popular a duty to convey fee simple title to the Condominium to Martin in exchange for $38,000.  The first two elements of Martin's breach of contract claim are therefore satisfied.

With respect to the third element, Martin claims that Banco Popular breached its duty under the Contract by refusing to sell him the Condominium at a purchase price of $38,000.  The parties agree that as of the date of this Opinion, Banco Popular has not conveyed the Condominium to Martin.  However, Banco Popular

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 12

contends that it did not breach the Contract, but rather properly terminated the Contract, or was excused from performing its duties thereunder.  Banco Popular asserts several reasons why the termination was proper, or performance was excused.  The Court will address each in turn.

### i.  Title to the Condominium

First and most fundamentally, Banco Popular claims that the termination of the Contract was proper because it was unable to perform its obligations thereunder within a reasonable period of time.  More specifically, Banco Popular contends that it could not convey title to the Condominium to Martin within a reasonable time after entering into the Contract, since it did not itself possess such title.  Because it is fundamental that a party cannot convey what it does not own,[4] the Court must determine as a threshold matter whether, and at what point in time, Banco Popular acquired title to the Condominium.

As Martin correctly points out, "Virgin Islands law provides that heirs-at-law succeed to real property of an intestate by operation of law, without the necessity of a formal administration of the estate." *Gov't of the V.I. v. Certain*

---

[4]  *See, e.g.,* V.I. CODE ANN. tit. 28, § 2 (providing that "conveyance of real property transfers the entire interest which the conveyor has and has the power to convey unless an intent to transfer a less interest is effectively manifested").

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 13

*Parcels of Land in Estate Nisky,* 713 F.2d 53, 57 (3d Cir. 1983);

*see also Matter of Chenoweth,* 3 F.3d 1111 (7th Cir. 1993)

(explaining the general principle that probate proceedings do not

affect the vesting of an estate, but only the right to possession

thereof).  Indeed, "Virgin Islands law recognizes the widely

accepted principle of descent providing that all real-property

interests pass to the heirs upon the death of the intestate

ancestor and can be asserted by those heirs immediately." *Id.* at

n.10 (noting that, "[e]ven under Danish law, which formerly

controlled in the Virgin Islands, real property vested in the

heirs immediately upon the death of the ancestor"); *see also* V.I.

CODE ANN. tit. 15, § 428 ("[T]he real property of the deceased is

the property of those to whom it descends by law or is devised by

will . . . ."); Restatement (Third) of Property § 2.1 cmt. d

(1999) ("The decedent's death is when intestate property passes

by intestacy to the decedent's heirs.").

    While title to such property vests immediately in the

decedent's heirs at the time of death, title 15, section 428 of

the Virgin Islands Code ("Section 428") provides that such

property is "subject to the possession of the executor or

administrator, and to be applied to the satisfaction of claims

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 14

against the estate . . . ." 15 V.I.C. § 428[5]; *see also id.* at §

311 (stating that "[t]he executor or administrator is entitled to

the possession and control of the property of the deceased both

real and personal and to receive the rents and profits thereof

until the administration is completed, or the same is surrendered

to the heirs or devisees by order of the court"); *id.* at § 394

(authorizing the administrator to examine, authorize, and pay

claims against the estate in the course of administration

thereof).[6]

Here, the undisputed facts show that James Reed owned the

Condominium in fee simple absolute, that he died intestate, and

_____

[5]   Section 428 further provides that:

> Upon the settlement of the estate and the
> termination of the administration thereof so much of
> such real property as remains unsold or
> unappropriated is discharged from such possession
> and liability without any order therefor.  But if
> there is any surplus of the proceeds of sale of such
> real property or any part thereof, the court shall
> order and direct a distribution of such surplus
> among those who would have been entitled to the land
> if the same had not been sold.

15 V.I.C. § 428.

[6]   The real property of the decedent may also be subject to
the rights of his widow or minor children to remain in possession
of the property as a homestead, until the administration of the
estate is completed. *See* 15 V.I.C. § 351 ("Section 351").  Here,
however, there is no evidence or allegation that James Reed was
survived by any widow or minor children.  As such, the limitation
set forth in Section 351 is inapplicable.

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 15

that his sole heir was Anngia Reed.  Thus, James Reed's interest

in the Condominium passed from him to Anngia Reed upon his death

in 1995.  At that time, Anngia Reed acquired title to the

Condominium in fee simple absolute, subject only to the rights of

Helen Reed, as administratrix of the Estate, to possess the

Condominium during administration of the Estate or to apply it to

the satisfaction of any claims against the Estate. *See, e.g., In*

*re Estate of Todman,* 48 V.I. 166, 175 (Super. Ct. 2006) (holding

that "Todman's interest in Parcel No. 14 vested immediately upon

his mother's death on March 31, 1962" and therefore "Todman was

able to immediately assert his legal right to the property at the

time of his mother's death in 1962," notwithstanding the fact

that the probate of Todman's mother's estate was not adjudicated

until 1985); *see also* 15 V.I.C. § 428.

It is also undisputed that in March, 2003, Anngia Reed and

Helen Reed executed a Deed in Lieu of Foreclosure, which

purported to transfer the Condominium to Banco Popular.  The

Court must therefore assess the effect of the Deed in Lieu of

Foreclosure to determine whether it conveyed Anngia Reed's

interest in the Condominium to Banco Popular.

In terminating the Contract with Martin, Banco Popular took

the position that

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 16

> Ms. Helen Reed resigned as Administratrix of the
> Estate of James L. Reed prior to her executing the
> Deed in Lieu of Foreclosure in favor of Banco
> Popular dated March 26, 2003.  As a result, the Deed
> in Lieu of Foreclosure, while recorded, was never
> sufficient to convey clear leal title to the
> Condominium to Banco Popular.

(Ex. N to Joint Stipulation of Undisputed Facts, Letter from

Fermín E. Fontanés, Esq. to Martin 1, Jan. 26, 2006.)

Title 15, section 241 of the Virgin Islands Code ("Section

241") states that "[t]he court in its discretion may allow an . .

. administrator to resign when it appears that the . . .

administrator is not in default in any matter connected with the

duties of his trust."  While Helen Reed submitted her request to

resign by letter to the Superior Court in 2002, there is no

evidence in the record to suggest that the Superior Court ever

allowed such resignation or made any findings with respect to

whether Helen Reed was in default in connection with her duties

as administratrix.  As such, Helen Reed's resignation was never

completed, and she continued to be the administratrix of the

Estate after she sent the 2002 letter, and throughout the

pendency of the probate proceedings.

Another potential impediment to the validity of the Deed in

Lieu of Foreclosure is the provision in title 15, section 491 of

the Virgin Islands Code ("Section 491") that "[n]o sale of the

decedent's property is valid unless made by order of the . . .

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 17

court, as in this chapter prescribed, or unless otherwise

authorized by law or the decedent's will. . . ."  By its own

terms, Section 491 applies only to sales, and not to other types

of conveyances.  Title 15 of the Virgin Islands Code does not

define the term "sale," nor does it expressly state whether a

deed in lieu of foreclosure requires court approval during the

pendency of the administration.

However, title 15, section 523 of the Virgin Islands Code

("Section 523") sheds some light on the question.  Section 523

sets forth a procedure for sale of mortgaged real property of a

probate estate by court order.  Pursuant to that procedure, after

the property is sold, the mortgagee must appear before the court

and show the amount of debts owed to him. *See* 15 V.I.C. § 523.[7]

---

[7]   Section 523 provides, in relevant part:

>     (a) If, upon application, the redemption referred to
> in section 522 of this title is deemed inexpedient
> or not proper, the court shall order the mortgaged
> property to be sold in like manner and with like
> effect as is provided in other cases of the sale of
> real property by this chapter. The conveyance to the
> purchaser shall operate to convey to him all the
> estate, right, and interest which the deceased would
> have had in the property had not the same been
> mortgaged by him.

>     (b) Ten days before making an order for the
> application of the proceeds of such sale, the
> mortgagee or other person to whom the debt which is
> secured by such mortgage is payable shall be cited
> to appear and show the amount of his debt, and make

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 18

"Thereupon the court shall order that the proceeds of the sale be first applied to the payment of the proper expenses of the proceeding and sale, and secondly, to the satisfaction of such debt, and the residue, if any, in due course of administration." *Id.* A plain reading of the statute makes clear that the "sale" of mortgaged property contemplated by Section 523 involves a transaction where the estate receives "proceeds" in exchange for real property. Additionally, by directing that the court order the mortgagee's debt to be paid out of the proceeds of the sale, Section 523 suggests that the transactions contemplated therein are ones where the mortgagee and the purchaser are not one and the same.

Here, neither Anngia Reed nor the Estate received any proceeds in exchange for the Deed in Lieu of Foreclosure. Rather, they gave up their entire interest in the Condominium and forfeited all payments already made on the mortgage so as to release their obligation on the debt owed to Banco Popular. Under these circumstances, the Court finds that the Deed in Lieu of Foreclosure did not constitute a "sale" of the Condominium for

---

his objections, if any, to the report of the expenses of the proceeding and sale as claimed by the executor or administrator. . . .

15 V.I.C. § 523(a)-(b).

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 19

purposes of Section 491.[8] *Cf. Ellingson Agency, Inc. v.
Baltrusch,* 742 P.2d 1009, 1012 (Mont. 1987) (holding that a
transfer of title in lieu of foreclosure was not "sale" under
Montana law); *Tompkins Land & Housing, Inc. v. Gedeon Group,
Inc.*, 644 So.2d 608 (Fla. Dist. Ct. App. 1994) ("A deed in lieu
of foreclosure does not constitute a sale or other conveyance
under the terms of the agreement between the parties."); *Kennedy
Blvd. Assocs. I, L.P. v. Tax Review Bd. of City of Philadelphia*,
751 A.2d 719, 725-26 (Pa. Commw. Ct. 2000) (holding that a
transfer by deed in lieu of foreclosure "was not a *bona fide* sale
of real estate at arm's length," nor was it the functional
equivalent of a sale upon foreclosure).

Banco Popular has not offered, nor is the Court aware of any
other reason to doubt the validity of the Deed in Lieu of
Foreclosure.  The Court finds that the Deed in Lieu of
Foreclosure properly conveyed Anngia Reed's interest in the
Condominium to Banco Popular. *Cf. In re Estate of Todman,* 48 V.I.
at 175 (holding that because Todman, as sole heir to his mother's
estate, was able to assert his right to his mother's real

---

        [8]  This conclusion also finds support in the fact that
Virgin Islands law exempts transfers of title "solely in order to
provide or release security for a debt or obligation" from the
requirement of paying the stamp tax normally imposed on transfers
of real property. *See* 33 V.I.C. § 128(2).

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 20

property immediately at the time of his mother's death, he "was legally empowered to enter into a valid and enforceable contract for the sale of" the property, even though probate proceedings had not been completed).  Thus, on March 26, 2003, Banco Popular acquired Anngia Reed's fee simple absolute interest in the Condominium, subject to the rights of Helen Reed, as administratrix of the Estate, to possess the Condominium during administration of the Estate or to apply it to the satisfaction of any claims against the Estate. *Cf.* 28 V.I.C. § 535 (providing that "a voluntary conveyance by the mortgagor to the mortgagee in lieu of foreclosure . . . shall be deemed to convey the full estate of the mortgagor including the right to redemption").

Approximately three years later, in entering its final Adjudication in the Probate Action, the Superior Court declared Anngia Reed to be the owner of the Condominium.  In its opposition to the instant summary judgment motion, Banco Popular contends that it does not have title to the Condominium because Anngia Reed has not conveyed the Condominium to Banco Popular subsequent to the October 4, 2006, Adjudication.  That contention presumes that the Adjudication operated to divest Banco Popular of its interest in the Condominium, and effectively nullify the Deed in Lieu of Foreclosure.

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 21

However, while this Court may "look[] to the decisions of
the Superior Court as 'a datum for ascertaining state law,' . . .
it [i]s not bound by the decisions of the Superior Court."
*Edwards v. HOVENSA, LLC*, 497 F.3d 355, 316 (3d Cir. 2007) (noting
that "[t]he Superior Court of the Virgin Islands (formerly the
Territorial Court) is not the highest court of the Territory.  It
is not even an intermediate appellate court, but rather a trial
court.").  Therefore, the Superior Court's Adjudication of title
to the Condominium in favor of Anngia Reed is not binding on this
Court.  Rather, this Court has already found that under Virgin
Islands law, title to the Condominium passed to Anngia Reed at
the time of her father's death, and then from Anngia Reed to
Banco Popular *via* the Deed in Lieu of Foreclosure.  Before the
entry of the Superior Court's final Adjudication of the Estate of
James Reed, Banco Popular had a fee simple absolute interest in
the Condominium, subject only to the rights of Helen Reed, as
administratrix of the Estate, to possess the Condominium or use
it to satisfy claims against the Estate.  The October 4, 2006,
Adjudication terminated the probate proceedings and discharged
Helen Reed as administratrix of the Estate.  Thus, after the
entry of the Adjudication, Banco Popular's ownership of the
Condominium was no longer subject to the exercise of any rights
of the administratrix in connection with the Probate Action.

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 22

In sum, the Court finds that, as of March 26, 2003, Banco Popular has had title to the Condominium in fee simple absolute. Accordingly, Banco Popular cannot avoid enforcement of the Contract on grounds of lack of ownership of the Condominium. Furthermore, because the Court has found that Banco Popular has had title to the Condominium since March 26, 2003, Banco Popular's argument that it properly terminated the Contract because it could not convey marketable title within a reasonable time after entering into the September 12, 2003, Contract must fail.

### ii.  Conflict of Interest

Banco Popular next argues that it properly terminated the Contract of Sale on January 26, 2006, because Martin had a conflict of interest.  In Banco Popular's view, a conflict of interest arose because Martin was the buyer as well as the selling realtor representing Banco Popular with respect to the transaction.

Section 387 of the Restatement (Second) of Agency ("Section 387") provides that "[u]nless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." Restatement (Second) of Agency § 387 (1958).  Furthermore, the Restatement (Second) of Agency § 391 ("Section 391") states that

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 23

"[u]nless otherwise agreed, an agent is subject to a duty to his principal not to act on behalf of an adverse party in a transaction connected with his agency without the principal's knowledge." *Id.* at § 391.  Thus, as the United States Court of Appeals for the Seventh Circuit has explained, "[i]t is axiomatic . . . that a broker cannot act as the representative for both buyer and seller in the same transaction unless both parties are fully aware of such dual representation and consent to it." *Frey v. Fraser Yachts*, 29 F.3d 1153, 1156 (7th Cir. 1994) (quotation omitted).  However, the principal's knowledge and consent to such dual representation may be implied from the circumstances of the case. *See* Restatement (Second) of Agency § 392 cmt. b ("One employed as agent violates no duty to the principal by acting for another party to the transaction if he makes a full disclosure of all relevant facts which he knows or should know, or if the principal otherwise knows of them and acquiesces in the agent's conduct.").

Here, it is undisputed that Martin acted as both the buyer, and as an agent for Banco Popular in connection with the sale of the Condominium.  However, it is also undisputed that such dual representation was clear on the face of the Contract.  Indeed, the first page of the Contract unambiguously lists Martin as the buyer, and paragraph eight clearly states that Martin is also the

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 24

selling realtor and an agent of Banco Popular with respect to the transaction.  The Contract is signed by Kean, as representative of Banco Popular.  In fact, Banco Popular admits in its opposition to the instant summary judgment motion that it "was superficially aware of Martin's status as both broker and buyer . . . ." (Opp'n to Mot. for Summ. J. 11, March 2, 2009.)  Under these circumstances it is reasonable to infer that Banco Popular, knowing of Martin's dual representation, acquiesced to such conduct. *Cf. Frey,* 29 F.3d at 1157 n.7 ("[W]e recognize that if Frey manifested knowledge of the relevant facts concerning McCarvill's dual agency, McCarvill could properly infer that his principal knew and consented to his dual agency.").  Accordingly, Banco Popular cannot now seek to avoid performance under the Contract on grounds of Martin's dual representation.

## 2.   Specific Performance

The Court has found that Banco Popular had a contract with Martin, pursuant to which it was obligated to convey the Condominium to Martin for $38,000.  It is undisputed that Banco Popular refused to convey the Condominium to Martin.  Banco Popular has asserted that such refusal did not constitute a breach of the Contract.  However, for the reasons explained above, the Court is not persuaded.  The Court finds that Banco

Martin v. Banco Popular de Puerto Rico
Civil No. 2008-109
Memorandum Opinion
Page 25

Popular breached its duties under the Contract by refusing to convey the Condominium to Martin for $38,000.

However, the Court's inquiry is not yet over.  The Court still must decide whether specific performance is an appropriate remedy for Banco Popular's breach.

Specific performance is available as a remedy for a breach of contract only if: (1) the terms of the contract are sufficiently certain; (2) no adequate remedy at law exists for the breach; (3) the party seeking relief has materially performed his obligations under the contract; and (4) the grant of such relief is not unfair, against public policy, or otherwise inequitable. *See* Restatement (Second) of Contracts §§ 357, 359, 362, 364, 369.  The decision to grant the equitable remedy of specific performance rests within the sound discretion of the Court. *See id.* at § 357.  "Parties seeking specific performance bear the burden of showing their entitlement to it . . . ." *Utilities, Inc. v. Blue Mountain Lake Assocs., L.P.,* 121 Fed. Appx. 947, 948-49 (3d Cir. Feb. 12, 2005) (unpublished).

Here, the terms of the Contract of Sale for the Condominium were clear.  Indeed, the Contract unambiguously obligated Banco Popular to sell the Condominium to Martin for the purchase price of $38,000.  The first element required for a grant of specific performance is therefore satisfied.

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 26

    With respect to the second element, in determining whether

an adequate remedy at law exists, the following three factors are

relevant:

> (a) the difficulty of proving damages with
> reasonable certainty,
>
> (b) the difficulty of procuring a suitable
> substitute performance by means of money awarded as
> damages, and
>
> (c) the likelihood that an award of damages could
> not be collected.

Restatement (Second) of Contracts § 360.  As comment e to the

Restatement (Second) of Contracts § 360 explains:

> Contracts for the sale of land have traditionally
> been accorded a special place in the law of specific
> performance.  A specific tract of land has long been
> regarded as unique and impossible of duplication by
> the use of any amount of money.  Furthermore, the
> value of land is to some extent speculative.
> Damages have therefore been regarded as inadequate
> to enforce a duty to transfer an interest in land .
> . . .

*Id.* at cmt. e; *see also In re General Development Corp.*, 84 F.3d

1364, 1370 (11th Cir. 1996) ("[G]iven the unique nature of land,

it is well established that money damages to a purchaser of land

is inadequate."); *In re Chateaugay Corp.,* 944 F.2d 997, 1007-08

(2d Cir. 1991) ("A seller of a unique property has an enforceable

duty to convey the property to a buyer.  For breach of that duty,

a court may order the remedy of specific performance."); *In re*

*Estate of Todman,* 48 V.I. at 177 ("Specific performance has

Martin v. Banco Popular de Puerto Rico
Civil No. 2008-109
Memorandum Opinion
Page 27

generally been ordered by the Court when the subject of the
controversy involves land.").

Here, it is undisputed that the Contract involved the
transfer of real property: the Condominium.  Banco Popular does
not argue that the Condominium is not unique.  The Court
recognizes that there is evidence in the record showing that
there are other condominium units in the Sapphire Beach
development for sale.  However, there is nothing in the record to
indicate the degree of similarity, if any, between the unit which
Martin contracted to purchase and those which are for sale.
Furthermore, even assuming arguendo, that there are other
condominium units sufficiently similar to the one at the heart of
the Contract, there is no evidence in the record to suggest that
such units are available for purchase by Martin at the same
price, terms, and conditions as those in his Contract with Banco
Popular.  Under these circumstances, the Court finds that Martin
has no adequate remedy at law because monetary damages could not
enable Martin to purchase the Condominium's duplicate. See, e.g.,
Kalinowski v. Yeh, 847 P.2d 673, 679 (Haw. Ct. App. 1993)
(holding that the purchasers of a condominium had no adequate
remedy at law for the seller's breach fo the sales contract
because "there [wa]s no evidence that the [purchasers] would have
been able to buy an identical unit in the same condominium

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 28

project at no more than the same price, terms, and conditions"); *Pruitt v. Graziano*, 521 A.2d 1313 (N.J. Super. Ct. App. Div. 1987) (holding that "a contract of sale of a designated condominium unit like any real property is specifically enforceable by the purchaser irrespective of any special proof of its uniqueness"); *Giannini v. First Nat. Bank of Des Plaines*, 483 N.E.2d 924, 933-34 (Ill. App. Ct. 1985) (rejecting the contention that "a condominium unit should be treated differently than other forms of realty with regard to specific performance of an agreement to purchase the property"). Accordingly, the second element in the specific performance analysis is satisfied.

Regarding the third element, it is undisputed that Martin paid an earnest money deposit of $3,800 for the Condominium. Pursuant to the Contract, the balance of the purchase price is not due until closing. There is no allegation or evidence in the record to suggest that Martin failed to perform any obligation imposed on him by the Contract. To the contrary, the evidence suggests that Martin has performed his duties under the Contract. Therefore, the third element is likewise satisfied.

With respect to the fourth element, Banco Popular argues that equity does not favor specific performance in this case. First, Banco Popular contends that specific performance would be unfair because the Contract was induced by mistake. More

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 29

specifically, Banco Popular contends that it "would not have contracted to sell the Condominium but for the mistaken belief that it had legal title to the Condominium[.]" (Opp'n to Mot. for Summ. J. 11, March 2, 2009.)  That argument is foreclosed by this Court's determination that Banco Popular has had title to the Condominium ever since March 26, 2003 – before it entered into the Contract of Sale with Martin.  Second, Banco Popular contends that specific performance would be unfair because the Contract was induced by an impermissible conflict of interest in that Martin was both the buyer and the selling realtor for the transaction.  However, the Court has already found that Martin's dual representation was not impermissible, since Banco Popular had knowledge of, and acquiesced to, such conduct.  The Court is thus unpersuaded that Martin's dual agency would render specific performance unfair.

Finally, Banco Popular argues that granting Martin's request for specific performance would result in undue hardship to it. Banco Popular asserts that it has paid property taxes on the Condominium and expended thousands of dollars in special assessments and refurbishment, which have improved the condition of the Condominium since 2003.  That assertion is difficult to reconcile with Banco Popular's statement that is does not own the Condominium.  Banco Popular has not offered any explanation of

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 30

why it would pay property taxes on, or spend money to improve, a condominium which it did not believe that it owned. In any event, while such expenditures would arguably impose some degree of hardship for Banco Popular, there is nothing in the record to suggest that such hardship was undue. Banco Popular also claims that the $38,000 purchase price set forth in the Contract is today "grossly inadequate." (*Id.* at 13.) While that may be true, the $38,000 purchase price was a term that Banco Popular and Martin bargained for and agreed upon in 2003. The fact that Banco Popular now wishes it had negotiated a higher price for the Condominium does not render the enforcement of the original terms of the Contract unfair.

Banco Popular has not presented, nor is the Court aware of, any other reason why the grant of specific performance in favor of Martin would be unfair, against public policy, or otherwise inequitable. Rather, the circumstances of this case dictate that specific performance is the most equitable remedy for Banco Popular's breach of its obligation to convey the Condominium to Martin for $38,000. *See, e.g., Anderson v. Onsager*, 455 N.W.2d 885, 892-93 (Wis. 1990) (granting specific performance for a purchaser as a remedy for a seller's breach of a contract to convey land because "there were no legal or factual

*Martin v. Banco Popular de Puerto Rico*
Civil No. 2008-109
Memorandum Opinion
Page 31

considerations which would have made the granting of specific performance unfair, unreasonable or impossible").

**B.   Banco Popular's Cross-Motion for Summary Judgment**

Banco Popular argues that it is entitled to summary judgment on its counterclaim against Martin for slander of title.[9]  Banco Popular has failed to satisfy its burden of proving that there are no genuine issues of material fact for trial, and that it is entitled to judgment as a matter of law on its counterclaim against Martin.

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, the Court will grant Martin's motion for summary judgment on his claim for breach of contract against Banco Popular, and on his request for specific performance of Banco Popular's obligations under the Contract. The Court will deny Banco Popular's motion for summary judgment on its counterclaim against Martin for slander of title.  An appropriate Order follows.

S\_____
                    **CURTIS V. GÓMEZ**
                       **Chief Judge**

_____

[9]  Banco Popular has not moved for summary judgment on its other counterclaims against Martin.